## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Carlos Gustavo Santana Ordonez, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:22cv719 (RDA/IDD) |
| | ) | |
| Harold W. Clarke, | ) | |
|     Respondent. | ) | |

MEMORANDUM OPINION

Carlos Gustavo Santana Ordoñez ("Petitioner" or "Ordoñez"), a Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his September 26, 2018 gang larceny conviction in the Circuit Court of Fairfax County, Virginia. [Dkt. No. 1]. The Court dismissed respondent's original motion to dismiss [Dkt. No. 17] on August 9, 2023, without prejudice, because the respondent had not filed all of the portions of the record as required by Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. [Dkt. No. 34]. On August 30, 2023, respondent filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits, that complied with Rule 5. [Dkt. Nos. 36-38]. Ordoñez has exercised his right to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), in accordance with Local Rule 7(K). [Dkt. No. 28, 42].[1] Accordingly, this matter is now ripe for disposition. For the reasons that follow, the Court has determined that respondent's Motion to Dismiss should be granted, and that the petition should be dismissed with prejudice.

---

[1] The Court has also considered the response Ordoñez filed to the first motion to dismiss, [Dkt. No. 28], as well as his response to the second motion to dismiss. [Dkt. No. 42].

## I. Background

On March 19, 2018, a Fairfax County grand jury indicted Ordoñez on one count of grand larceny, in violation of Code § 18.2-95, and one count of felony larceny with the intent to sell, in violation of Code § 18.2-108.01. [Dkt. 38-6] (*Commonwealth v. Ordoñez*, Case No. FE-2018-408). The matter was set for a three-day jury trial beginning on June 18, 2018. [Dkt. No. 38-7]. On June 18, 2018, Ordoñez, with counsel, entered into a plea agreement pursuant in which Ordoñez agreed to enter an *Alford*[2] plea of guilty to grand larceny*, with no agreement as to sentence, and pursuant to which the Commonwealth agreed to *nolle prosequi* the felony charge of larceny with intent to sell. [Dkt. No. 38-9].

On June 18, 2018, Ordoñez was arraigned and entered a guilty plea, pursuant to *Alford,* and he was placed under oath.[3] [Dkt. No. 38-8 at 4-8]. The court conducted a colloquy to determine whether Ordoñez's plea was knowingly and voluntarily entered, and began by telling Ordoñez that, if he did not understand a question, he was permitted to ask the court to explain, or he would be permitted to consult with his attorney. [*Id.* at 4-5]. The court also ensured Ordoñez was aware that a Spanish-language interpreter was present to assist him. [*Id.* at 6]. In the ensuing colloquy, Ordoñez stated he understood the grand larceny charge against him; that he had discussed the charge and its elements with his attorney; that he had discussed what the Commonwealth must prove before he could be found guilty of the charge; and that he had enough time to discuss possible defenses to the charge. [*Id.*]. The court then asked Ordoñez whether he had the opportunity to discuss his plea with his attorney, and Ordoñez answered, "Yes, of course." [*Id.* at 6-7]. Ordoñez

---

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).  Under *Alford*, a defendant maintains their innocence but admits that the prosecution's evidence would likely result in a guilty verdict if brought to trial and, therefore, enters a guilty plea.

[3] A Spanish interpreter was sworn in and she was available to Ordoñez. [Dkt. 38-8 at 3].

then responded that he was pleading guilty, pursuant to *Alford,* freely and voluntarily. [*Id.* at 7].

When asked about his decision to plead guilty pursuant to *Alford*, Ordoñez agreed with his trial

counsel's representation that "[h]e's admitting that the evidence is such that he feels he would be

convicted in front of the jury, and he doesn't wish to go further and take that chance." [*Id.* at 7-8].

The court then requested a proffer by the prosecutor, which proceeded as follows:

> From September 16 to 18 of 2016, the Dulles Expo Center in Chantilly, Virginia, which is in Fairfax County, hosted the International Gem and Jewelry Show.

> The event showcased numerous sellers of diamonds, gemstones, jewelry, watches, gold and other precious commodities.

> One of the sellers at the show was the victim in this case—Mr. Abdeen, a self-employed jeweler from Richmond.

> On December 17th, the offense date, Mr. Abdeen was walking to his car after he had left the show and packed up his merchandise into a satchel. The merchandise consisted of approximately 92 items.

> Mr. Abdeen states that the value of these items was over a million dollars. Mr. Abdeen walked out of the Expo Center carrying a satchel.

> The man . . . later identified as Ramiro Valencia . . . approached the driver's side of the car and stated that Mr. Abdeen had dropped something.

> Mr. Abdeen put the satchel on the passenger seat and looked toward the ground for the supposedly dropped money.

> A second man, later identified as the Defendant, Carlos Santana Ordoñez, snatched the briefcase from the passenger seat and walked away.

> Mr. Valencia blocked Mr. Abdeen from intercepting Santana Ordoñez and grabbed the victim to keep him from chasing Mr. Santana Ordoñez.

> Valencia and Abdeen struggled for a few moments. Valencia broke off and got away. In the struggle Valencia dropped a backpack containing a cell phone, map of New York City, a Virginia Transit map and a map of the Expo Center's Gem and Trade Show.

> Later police searched the phone that they found and found text messages between a person named, quote "Rami" . . . which is believed to be Mr. Valencia – and, quote "Carlos[,]"—with the Defendant—discussing selling jewelry in New York.

> In searching the area for the suspects an officer located an individual nearby who was later discovered to be Valencia.

> However, after a brief interaction, the officer didn't realize that Valencia was a suspect, let him go, and he is still on the loose.

The Defendant was spotted after the crime walking towards a Holiday Inn located in the area of the Expo Center. Police obtained surveillance video and still photographs which show the Defendant inside the Holiday Inn shortly after the crime.

The Defendant was carrying, . . . among other things, a Walmart bag and wearing a jacket and scarf. The video footage showed the Defendant at the front of the hotel for a few minutes but then go get into the elevators.

He was seen by another camera peering around the back doors as if to see if officers were around.

Several weeks later on January the 11th, 2017, a Holiday Inn manager was taking down the Christmas decorations in the hotel and went to get the Christmas tree box in Storage Room F on the 6th floor.

The Holiday Inn manager indicated that people rarely, if ever, went into the storage room except when the Christmas decorations were being taken down.

When a manager opened the Christmas tree box from the storage room he located the jacket and scarf worn by the Defendant as seen in the surveillance video.

There was also a Walmart bag that the Defendant was seen in the video carrying as well as different cases and boxes that had contained the victim's jewelry.

The Christmas tree box was big enough for the Defendant to have hidden inside. And it was believed that he may have done so in order to elude capture while police were surveilling the hotel after the crime.

[T]he jacket was submitted to the Department of Forensic Science where a DNA sample was gotten from that and awaited the Defendant being apprehended so a DNA sample of his DNA could be obtained and compared.

The Defendant was subsequently arrested on September 18th, 2017, at JFK International Airport in New York. He was brought to Virginia. A sample of his DNA was taken and was submitted to the Department of Forensic Science.

The DNA came back from the jacket as coming back to the Defendant in this case. All of the foregoing events occurred in Fairfax County . . . .

[*Id.* at 8-12].

The colloquy continued with Ordoñez stating he understood that by pleading guilty he was waiving certain constitutional rights, including: his right to a trial by jury; the right to remain silent with respect to the charge against him; and the right to cross-examine and confront any witnesses brought against him. [*Id.* at 14]. Ordoñez further averred that he had no impairments that would preclude Ordoñez from entering a knowing and voluntary plea, such an any mental or physical

disability, and was not under the influence of any substances such as alcohol or other mind-altering drugs that would inhibit his ability to understand the proceedings. [*Id.* at 15-16]. He further averred that no one had threatened him or forced him to accept the plea agreement, and that there were no promises made to him in exchange for his guilty plea, other than what was discussed in the plea agreement form in court. [*Id.* at 16].

Turning to the plea agreement, Ordoñez affirmed that he had signed the form, and that he had either "read through" the form or had it "translated for" him before he signed it. [*Id.* at 17]. When asked if he believed he understood everything contained in the agreement, Ordoñez answered, "Yes, ma'am." [*Id.*]. He further confirmed that his attorney had explained everything in the agreement, and that the statements of fact contained in the agreement were all true. [*Id.* at 17].

Regarding the range of punishment he faced, Ordoñez was told that the charge of grand larceny was punishable by up to twenty years in prison. [*Id.* at 18]. Ordoñez stated that he understood the range of punishment and that he had discussed the sentencing guidelines with his trial attorney. [*Id.*]. He also answered affirmatively when the court asked if he understood that the guidelines were not binding on the court. [*Id.*]. Further, after the court confirmed that there was no agreement as to sentence and that the Commonwealth had agreed to request the entry of a *nolle prosequi* for the second felony count, Ordoñez agreed that accurately reflected his agreement with the Commonwealth. [*Id.* at 19].

At the end of the colloquy, the court asked, "Now, are you satisfied with the services of your attorney in this matter?" [*Id.*]. Ordoñez answered, "Yes, ma'am." [*Id.*]. The court also confirmed that Ordoñez understood that by pleading guilty he risked giving up any right to appeal his case, including his sentence. [*Id.*]. The colloquy ended with Ordoñez stating he had understood

all of the court's questions, that he had answered all of the court's questions truthfully, and that he did not have any questions for the court. [*Id.* at 19-20].

The court accepted Ordoñez's *Alford* plea and found that Ordoñez had "intelligently concluded that it was in his best interest to enter the *Alford* plea" based on the "overwhelming" evidence of guilt presented to the court. [*Id.*]. The court granted the Commonwealth's motion to *nolle prosequi* the felony larceny with intent to sell charge, and the case was continued for sentencing. [*Id.* at 22].

On September 14, 2018, Ordoñez appeared with counsel for sentencing, and a Spanish interpreter was sworn. [Dkt. No. 38-10 at 1-3]. During that hearing, the victim testified on behalf of the Commonwealth to the value of the jewelry that had been taken from him. [*Id.* at 6, 10-13]. The victim stated that he had been in the jewelry business for forty years; that the business was his sole source of income; and he identified photographs and an itemized list he had provided to the police of the jewelry stolen. [*Id.* at 7-10]. The itemized list provided by the victim stated that the "wholesale value" of the jewelry taken, but the victim noted that the items would return a higher retail price when sold to the public. [*Id.* at 10-11]. The value assigned to each item reflected the price the victim had paid for each piece of jewelry, which in sum exceeded $1.2 million dollars. [*Id.* at 11-12]. The victim estimated that the total retail value of the stolen jewelry was between four and six million dollars depending on the "markup" of each jewelry store. [*Id.* at 13]. The victim further testified to the damage this crime had done to his livelihood, his inventory, the 30 years he had spent building his business in the United States, and the impact this crime had on his ability to provide for his family and his health. [*Id.* at 14-15].

On cross-examination, Ordoñez's trial counsel pointed out that the victim only had the pictures of the items and his own estimate of their value, but that he did not have receipts or

independent documents to corroborate his estimates. [*Id.* at 19-20]. The victim admitted that he did not have records of any sales or bank deposit receipts following the sale of the jewelry to show the court. [*Id.* at 20]. Ordoñez's trial counsel also questioned the victim about duplicate items on the list. (*Id.* at 21-25). The victim testified he had not duplicated items because items on the list were clearly marked as "described earlier." [*Id.* at 21-22]. When pressed by Ordoñez's trial counsel about duplicates, the victim claimed that he had not added the duplicates, but did not know "what the Detective added and what . . . didn't copy." [*Id.* at 23-25]. Ordoñez's trial counsel also asked if the victim had brought any jewelry vendors with him to testify and to corroborate his estimates of the value of the pieces, to which the victim replied that he was not in charge of the case. [*Id.* at 27-28].

After hearing all the evidence regarding the value of the jewelry, along with argument from both the Commonwealth and trial counsel, the court set restitution at $818,000. [*Id.* at 43]. The court rejected the victim's $1.2 million valuation of the stolen property in favor of Ordoñez's calculation, $818,000, based on the victim's testimony. [*Id.* at 39]. The court thereafter sentenced Ordoñez to ten years in prison with three years post-release supervision. [*Id.* at 45].

On October 3, 2018, the court granted trial counsel's motion to withdraw and appointed Christine Carter to represent him. [Dkt. No. 38-11]. On October 4, 2018, the court stayed the final sentencing order pending any post-trial motions filed by Ordoñez. [Dkt. No. 38-12]. On December 19, 2018, Ordoñez appeared in court with retained counsel, Robert Bruce, a Spanish interpreter was sworn, and the court heard his motion to withdraw his *Alford* plea. [Dkt. No. 38-13 at 1-4].

Upon reviewing the motion submitted by Ordoñez, the Commonwealth's response, and oral argument from both sides, the court denied the motion. [*Id.* at 17-18]. The court noted that the court's "colloquy" had addressed the points raised in Ordoñez's motion. [*Id.* at 6].  Counsel, Mr.

Bruce, also agreed that this was "true." [*Id.* at 6]. The court explained that a defendant could only withdraw a plea after sentencing if he demonstrated an error meeting the manifest injustice standard.  The court noted that this standard requires that the error be "open, clear, visible, unmistakable, indubitable, indisputable evidence—self-evident that which is clear and requires no proof that which is notorious." [*Id.* at 17]. The court found that Ordoñez had not met that standard, and denied his motion. [*Id.* at 17-18]. On February 1, 2019, the court appointed new counsel, Kimberly Phillips, to represent Ordoñez on appeal. [Dkt. No. 38-14].

Ordoñez, by counsel, filed a petition for appeal in the Court of Appeals of Virginia that raised a single claim: "The trial court erred in failing to find that there was a manifest injustice and [in]  denying Mr. Ordonez's Motion to withdraw his guilty plea." [Dkt. No. 38-2 at 14]. The court denied his petition by order dated August 26, 2019. [*Id.* at 24-28]. He did not appeal to the Supreme Court of Virginia.[4]

On July 22, 2020, Ordoñez, proceeding *pro se*, filed a petition for a writ of habeas corpus in the circuit court [Dkt. No. 38-3], and raised the following claims:

A. Ineffective Assistance of Trial Counsel

    1)   Trial counsel (Laurence Tracy), was ineffective because he failed to spend adequate time during the initial interview discussing Ordoñez's case and failed

---

[4] The circuit court wrote a letter dated July 1, 2020 noting that Ms. Phillips was "leaving private practice" and that it was appointing "Taso R. Saunders to replace Phillips by separate order." The letter was sent to Ordoñez, the prosecutor, Saunders, and Phillips. On July 10, 2020, the circuit court entered an order allowing Phillips to withdraw because she had "accepted a position as an Assistant Commonwealth's Attorney in Loudoun County, Virginia," and appointed Saunders in her place. Although Ordoñez mentions Saunders often in letters in the circuit court records, there is no indication that Saunders ever filed any pleadings, petitions, briefs or other matters on his behalf. Ordoñez's various letters complained about Saunders and sought his removal as his counsel, but also establish that Ordoñez knew that Phillips had been allowed to withdraw and that Saunders had been appointed to represent him. Ordoñez acknowledged in a letter dated August 5, 2020, that Saunders had been appointed to represent him; and in a September 8, 2020 letter Ordoñez discusses Saunders having been appointed to replace Phillips. In a March 17, 2021 letter, Ordoñez states he met with Saunders in his counselor's office at the Coffeewood Correctional Center in October 2020. Ordoñez, therefore, was aware, no later than August 5, 2020, that Phillips no longer represented him, that Phillips had accepted a position as a prosecutor, and that Saunders had been appointed to assist him. The March 17, 2020 letter indicates that he had discussed the appeal with Saunders during the October 2020 meeting in which Ordoñez stated he "strongly" wanted to pursue the direct appeal and raise "several evidentiary claims."

to communicate as frequently as Ordoñez desired prior to his court dates. [Dkt. No. 38-4 at 10].[5]

2) Trial counsel was ineffective because he provided bad advice to plead guilty, indicating to Ordoñez that the Commonwealth would drop a charge of possession of stolen property with intent to sell, and he would receive a "time-served" sentence and be "release[d] immediately on probation" in exchange for pleading to the charge of grand larceny. [*Id.* at 10].

3) Trial counsel was ineffective because he failed to present Ordoñez with a plea form prior to his court date on June 18, 2018. Furthermore, counsel did not provide a Spanish-language copy of the plea form, and despite a Spanish interpreter being present, she did not read the document in Spanish. Ordoñez felt "very rushed" when he signed this plea form and wanted more time to consult with trial counsel to determine whether the agreement "truly was a good deal." [*Id.* at 11].

4) Trial counsel was ineffective because he did not advise Ordoñez of the consequences of accepting an *Alford* plea or his sentencing exposure; and failed to advise Ordoñez of the "available options and possible consequences of pleading guilty or going to trial." Ordoñez did not understand the consequences, and had he been properly advised, he would have rejected the plea agreement and either "instructed [trial counsel] to seek a new agreement or [go] to trial rather than plea[d] guilty." [*Id.* at 11-12].

5) Trial counsel was ineffective because he provided unreasonable advice because Ordoñez received a ten-year prison sentence after he entered an *Alford* plea on the charge of grand larceny. [*Id.* at 12].

6) Trial counsel was ineffective because he failed to negotiate a better plea deal. [*Id.* at 12-13].

7) Trial counsel was ineffective because he failed to investigate and call expert witnesses during the sentencing phase to rebut the Commonwealth's evidence "of the astronomical[ly] high value of the stolen property" and the amount of restitution imposed by the court. [*Id.* at 12-13].

8) Trial counsel was ineffective because he failed to present the same video evidence shown during the preliminary hearing at the sentencing hearing in Circuit Court. This "information would have produced a different result in [Ordoñez's] sentence." [*Id.* at 12-13].

B. Trial Court Errors

1) The trial court erred by denying Ordoñez's Motion to Withdraw Alford Plea, and by failing to grant him a trial. [*Id.* at 14-15].

2) The trial court erred by not "expand[ing] its colloquy" to ensure that Ordoñez understood "the very real probability of a sentence well over the guidelines"

---

[5] Trial counsel, Laurence Tracy, died in February 2020.

and that Ordoñez had an "absolute right to have a jury determine the appropriate sentence." [*Id.* at 15].

C. Ineffective Assistance of Appellate Counsel

1) Appellate counsel (Kimberly Phillips) failed to raise all of the claims that "should have been known at the time of [Ordoñez's] direct appeal." [*Id.* at 15].

2) Appellate counsel failed to communicate to Ordoñez when the Court of Appeals of Virginia issued a one-judge opinion on August 25, 2019, denying his petition for appeal. She failed to inform Ordoñez of the status of the case, and the steps in the appeals process. [*Id.* at 16].

3) Appellate counsel failed to "prosecute the appeal to the completion" because she did not file a demand for a three-judge panel in the Court of Appeals of Virginia. If the Court of Appeals considered the merits of the appeal, it would have overturned Ordoñez's conviction. [*Id.* at 16].

The circuit court dismissed Ordoñez's petition on November 13, 2020. *Ordoñez v. Clarke*, No. CL2020-10662. [Dkt. No. 38-4]. Ordoñez filed a petition for appeal in the Supreme Court of Virginia, which refused his petition in a summary order dated February 8, 2022. [Dkt. No. 38-5 at 50-102]. *Ordoñez v. Clarke*, Record No. 210248.

## II. Federal Claims

On June 14, 2022, Ordoñez, proceeding *pro se*, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in this Court. [Dkt. 1 at 15]. On June 30, 2022, the Court ordered Ordoñez to amend the petition to comply with the local rules. [Dkt. No. 4]. On July 8, 2022, he filed his amended petition, which raises the following claims:

1.     Petitioner was denied his right to effective assistance of counsel, and consequently, a fair trial, as guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution, as defined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 688 (1984), when trial counsel:

i. Provided minimal pretrial consultation;

ii. Consulted without a necessary interpreter;

iii. Provided substantive evidence against his interests;

iv. Provided mistaken advice a plea would result in a probation-only sentence;

v. Failed to investigate the crucial issue of valuation;

vi. Failed to advocate at sentencing; and/or

vii. Failed to advocate the state's prosecution was prohibited by the prior acquittal of the petitioner for the same alleged acts in the federal New York District Court. [Dkt. No. 5 at 5].

2.      Petitioner was actually and/or constructively abandoned by his appointed appellate counsel and, consequently, denied a fair appeal proceeding, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, under the presumed prejudice standard defined by the United States Supreme Court in *United States v. Cronic*, 466 U.S. 648 (1984). [*Id.* at 6-7].

3.      Petitioner was denied his right to effective assistance of appellate counsel, and, consequently, a fair appellate proceeding, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, as defined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 688 (1984), and *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), when appellate counsel:

i. Improperly abandoned his appeal;

ii. Created an actual conflict of interest by "abandoning" him on direct appeal "to accept a job as a state prosecutor"; and

iii. Not raising an obvious double jeopardy claim on direct appeal. [*Id.* at 8; Dkt. No. 1-1 at 20].

4       Petitioner was denied due process and equal protection of the law, as guaranteed by the Fourteenth Amendment of the United States Constitution, and consequently, a fair trial, by the trial court's reliance on impermissible factors to impose a "whooping message sentence." [Dkt. No. 5 at 9-10].

5.      Petitioner was denied due process of law, as guaranteed by the Fourteenth Amendment of the United States Constitution, and, consequently, a fair trial, by the trial court's adoption of improper sentencing procedures. [*Id.* at 12].

6.      Petitioner was denied due process of law, as guaranteed by the Fourteenth Amendment of the United States Constitution, and, consequently, a fair trial, when he was twice put in jeopardy, in violation of double jeopardy guarantees contained in the Fifth Amendment of the United States Constitution and Article I, Section 8 of the Constitution of Virginia, by his subsequent state prosecution after being acquitted on the merits for the same alleged acts by the federal court in the Southern District of New York. [*Id.* at 14].[6]

---

[6] On August 1, 2023, Ordoñez indicated that he had not prevailed on Claim 6 in a post-conviction motion to vacate his conviction he had filed in the circuit court, which sought relief based upon an alleged double jeopardy argument premised upon Virginia Code § 19.2-294. [Dkt. No. 33]. The motion to vacate was filed on September 9, 2021 in the circuit court, and apparently denied on July 21, 2023. [Dkt. No. 33]. Ordoñez decided not to appeal that decision, and advised the Court that "Claim Six in my federal habeas, should be dropped from my federal habeas petition." [*Id.*]. On August 9, 2023, the Court granted Ordoñez's motion to voluntarily dismiss Claim 6. [Dkt. No. 34].

### III. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. *See* 28 U.S.C. § 2254(b); *Granberry v Greer*, 481 U.S. 129 (1987). To exhaust a claim, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A petitioner convicted in a Virginia court must have presented the same factual and legal claims raised in his federal § 2254 petition to the Supreme Court of Virginia. *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002); *see, e.g.*, *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

Exhaustion requires that a petitioner "raise the claim at each level of state court review," which includes his initial post-conviction petition before the trial court, and again on appeal. *Smith v. Gaetz,* 565 F.3d 346, 352 (7th Cir. 2009); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in *each* appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." (emphasis added)); *Jones v. Sussex I State Prison*, 591 F.3d 707, 712-13 (4th Cir. 2010) (to exhaust, a "'the prisoner must 'fairly present' his claim in *each* appropriate state court . . ., thereby alerting that court to the federal nature of the claim'. . . [he] must raise his claim before *every* available state court," including appellate courts "whose review is discretionary" (emphasis added) (quoting *Reese*, 541 U.S. at 29; *O'Sullivan*, 526 U.S. at 847)).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citation omitted). Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." *Id.* (citation omitted).

Exhaustion requires that not only must a claim be exhausted but "both *the operative facts and the controlling legal principles*" upon which a petitioner relies must have been exhausted as well. *Kasi*, 300 F.3d at 501-02 (emphasis added) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)). The requirement that facts be exhausted is an important aspect of exhaustion under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see Muhammad v. Clarke*, No. 1:11cv345, 2012 WL 259869, *4 (E.D. Va. Jan. 26, 2012) (where a petitioner attempts to allege unexhausted facts, the federal court must defer to the state court's finding) (citing *Kasi*, 300 F.3d at 501-02; *Pinholster*, 563 U.S. at 182-83), *appeal dismissed*, 474 F. App'x 979 (4th Cir. 2012). *Pinholster* emphasized "that the record under review is limited to the record in existence at that same time—*i.e., the record before the state court*." *Id.* (emphasis added).[7] The Fourth Circuit found that the reasonableness of a state court decision is evaluated

---

[7] *Pinholster* explained that

[w]hat makes the consideration of new evidence strange is not how "different" the task would be, but rather the notion that a state court can be deemed to have unreasonably applied federal law to evidence it did not even know existed. We cannot comprehend how exactly a state court would have any control over its application of law to matters beyond its knowledge.

563 U.S. at 183 n.3.

"'in light of the evidence presented in the State court proceeding.'" *Porter v. Zook*, 898 F.3d 408, 422 (4th Cir. 2018).

Respondent admits that Claims 1(i) through 1(vi); Claim 2; Claim 3(i); and Claims 4 and 5 are exhausted in that Ordoñez raised each claim in his petition for appeal to the Supreme Court of Virginia from the circuit court's denial of his habeas corpus petition. [Dkt. No. 38 at 14]; *see Matthews*, 105 F.3d at 911. However, Respondent argues that Claims 4 and 5 "are assertions of non-jurisdictional trial court error, which were raised in the petition for appeal to the Supreme Court of Virginia but not in the petitioner's original state petition for a writ of habeas corpus." [*Id.* at 11]. Thus, Respondent argues that Claims 4 and 5 are "barred by the rule in *Slayton v. Parrigan*, 215 Va. 27, 30, 205 S.E.2d 680, 682 (1974)." [*Id.*]. The record establishes that, while Claims 4 and 5 were each included in the petition for appeal, they were not raised in the circuit court habeas petition. This means they were "presented for the first and only time in a procedural context in which [their] merits w[ould] not be considered" and "[r]aising the claim[s] in such a fashion does not . . . constitute 'fair presentation.'" *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Claims 4 and 5 are nevertheless exhausted "if it is clear that [the habeas petitioner's] claims are now procedurally barred under" state law.

"Where questions concerning exhaustion arise, the petitioner bears the burden of demonstrating that state remedies have, in fact, been exhausted." *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994). Respondent asserts that Claims 1(vii) and Grounds 3(ii) and 3(iii) are unexhausted and simultaneously defaulted because they were not raised in state court habeas petition. Each of the Claims is discussed further below.

A. *Claim 1(vii)*

In Claim 1(vii), Ordoñez alleges his counsel was ineffective because he failed to investigate the previous proceedings in the United States District Court for the Southern District of New York and move to dismiss his state prosecution pursuant to Virginia Code § 19.2-294[8] based upon his "acquittal" in the "New York Federal District Court." [Dkt. No. 1-1 at 16]. Ordoñez raised the substantive portion of his ineffective assistance of counsel claim in his federal petition as Claim 6, citing Virginia Code § 19.2-294. Ordoñez asserted his double jeopardy rights had been violated by his conviction for grand larceny in Virginia after the alleged prior acquittal in New York federal district court. Petitioner argues that Claim 1(vii) is exhausted, [Dkt. No. 28 at 5-6], but he does not address his withdrawal of Claim 6. *See supra* note 6. Whether exhausted or not, by withdrawing Claim 6, there is no alleged unreasonable act to support the ineffective assistance of counsel allegation in Claim 1(vii). In any event, the claim for an alleged unreasonable act has no merit.[9]

Here, Ordoñez effectively conceded that Claim 1(vii) has no merit by withdrawing Claim 6. Ordoñez now argues that withdrawing the claim was an unreasonable act that demonstrates his

---

[8] Section 19.2-294 is sometimes referred to as a statutory prohibition against double jeopardy, and reads as follows:

> If the same act be a violation of two or more statutes, or of two or more ordinances, or of one or more statutes and also one or more ordinances, conviction under one of such statutes or ordinances shall be a bar to a prosecution or proceeding under the other or others. Furthermore, if the same act be a violation of both a state and a federal statute, a prosecution under the federal statute shall be a bar to a prosecution under the state statute. The provisions of this section shall not apply to any offense involving an act of terrorism as defined in § 18.2-46.4.

> For purposes of this section, a prosecution under a federal statute shall be deemed to be commenced once jeopardy has attached.

[9] In federal habeas, a district court has the discretion to deny relief on the merits even if a claim is unexhausted. *See Swisher v. True*, 325 F.3d 225, 232-33 (4th Cir. 2003) (affirming district court's decision to deny habeas relief on the merits pursuant to § 2254(b)(2), although claim was "clearly unexhausted"); *see, e.g.*, *Guarino v. Clarke*, No. 1:21cv1133, 2022 U.S. Dist. LEXIS 97318, *16 (E.D. Va. May 31, 2022) (recognizing district court's discretion to deny habeas relief on merits of unexhausted claim).

counsel was ineffective; however, this argument is unpersuasive.[10] *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (even if counsel was ineffective in litigating a motion to suppress, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice"); *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) ("Counsel is not required to engage in the filing of futile motions."); *see also Bell v. Jarvis*, 236 F.3d 149, 164, (4th Cir. 2000) ("Indeed, 'winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)). As a result, because there is no underlying unreasonable act and because Petitioner withdrew the related claim in Claim 6, Claim 1(vii) will be dismissed.

   *B. Claims 3(ii) and 3(iii)*

   In Claim 3(ii) Ordoñez alleges that his appellate counsel (Phillips) had an actual conflict of interest because she sought employment as a state prosecutor while representing him and "abandoned" him on direct appeal. [Dkt. Nos. 1-1 at 20]. In Claim 3(iii), he alleges she was ineffective for not raising the "obvious double jeopardy claim on direct appeal." [Dkt. Nos. 1-1; 5 at 8]. Ordoñez argues he exhausted both claims on direct appeal in the Supreme Court of Virginia

---

[10] Indeed, the district court in New York did not acquit Ordoñez of any criminal act; it dismissed a criminal complaint prior to indictment after it found there was no probable cause to support the criminal complaint. *United States v. Carlos Ordonez*, No. 1:17-mj-06960-UA-2 (S.D.N.Y. Sept. 22, 2017), Dkt. Nos. 5, 6 at 8. The dismissal negates any claim of double jeopardy, and does not form the basis for a valid claim under Virginia Code § 19.2-294, which Ordoñez conceded in his August 8, 2023 letter. [Dkt. No. 33] ("Because my double-jeopardy claim was based on an interpretation of a state statute, I also believe the claim, which is Claim Six in my federal habeas, should be dropped from my federal habeas petition."). Virginia Code § 19.2-294 states that "if the same act be a violation of both a state and a federal statute, a prosecution under the federal statute shall be a bar to a prosecution under the state statute," and states that "[f]or purposes of this section, a prosecution under a federal statute shall be deemed to be commenced once jeopardy has attached." As the district court in New York dismissed the complaint because it found no probable cause, jeopardy never attached. *See Serfass v. United States,* 420 U.S. 377, 390 (1975) (in a jury trial, jeopardy attaches when the jury is sworn; in a bench trial, jeopardy attaches when the first witness is sworn).

and cites to portions of the argument section of his appellate brief and not the petition he filed in circuit court. [Dkt. No. 28 at 7-8].

The state habeas and criminal records support the Respondents' argument that Claim 3(ii) is not exhausted. Ordoñez did not include a conflict of interest claim in his state petition for a writ of habeas corpus that he filed in the circuit court, and neither party references "conflict of interest" in their pleadings in the circuit court. Ordoñez's first mention of appellate counsel Phillips having a conflict of interest for seeking a position as a prosecutor while representing Ordoñez was in his petition for appeal in the Supreme Court of Virginia, which he executed on April 22, 2021, and filed on April 26, 2021. [Dkt. No. 38-5 at 117, 134, 142].[11] The assignment of error in his petition for appeal related to the dismissal of his claim of ineffective assistance of appellate counsel referenced the following pages from the circuit court habeas record: pages 6-7 of his Memorandum; pages 33-38 of the respondent's Motion to dismiss; and pages 31-36 of the Final order. [*Id.* at 121]. As noted, Ordoñez did not raise the conflict of interest claim in the state circuit court proceedings, and "conflict of interest" is not mentioned on the portions of the circuit court habeas proceedings he references in his petition for appeal.

To exhaust a claim, Ordoñez must "do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely;

---

[11] Ordoñez's argument he exhausted his claim relies solely on references to statements in the argument portion of his petition for appeal in which he asserts that Phillips had abandoned him on direct appeal. His petition for appeal argues that after Phillips filed his petition for appeal on May 3, 2019, "[s]he then sought employment as prosecutor without disclosing this conflict to Ordoñez or the court and without seeking to withdraw as counsel of record." [*Id.* at 140]. Although not cited by Ordoñez, the petition for appeal also states that Phillips "abandonment [of his appeal] was triggered by her undisclosed conflict to seek job as prosecutor." [*Id.*] (citing *Strickland v. Washington*, 466 U.S. 668 (1984) and *United States v. Cronic*, 466 U.S. 648 (1984)). The fact that *Cronic* is not mentioned in the circuit court record is further evidence that Claim 3(ii) is unexhausted because claims of ineffective assistance of counsel under *Cronic* and *Strickland* are evaluated under different standards. *See United States v. Nicholson*, 475 F.3d 241, 249 (4th Cir. 2007) (ineffective assistance claim premised on the existence of a conflict of interest "is subjected to the specific standard spelled out in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), instead of that articulated in *Strickland*.").

the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *Mallory*, 27 F.3d at 995; *see also Strong v. Johnson*, 495 F.3d 134, 139 (4th Cir. 2007) (indicating that absent leave of court, only two pleadings are permitted in an "original jurisdiction habeas corpus case: a verified petition and a responsive pleading"). As in *Mallory*, Ordoñez did not include a conflict of interest claim in his state habeas petition as a ground for relief. *Mallory*, 27 F.3d at 995. And in a further parallel to *Mallory*, here there is also no motion to amend to include a conflict of interest claim, and as such the Supreme Court of Virginia had no jurisdiction to consider such a claim. *Id.* (citing Sup. Ct. Va. R Rule 1:8 (Amendments) and *Mechtensimer v. Wilson*, 431 S.E.2d 301, 302 (Va. 1993) (where a party fails "to obtain leave of court to amend his original motion . . . the court did not acquire jurisdiction to adjudicate any causes of action alleged in the amended motion")); *see also Ahari v. Morrison*, 654 S.E.2d 891, 892 (Va. 2008); *Bowie v. Murphy*, 624 S.E.2d 74, 76 (Va. 2006) (because the appellant's allegation against defendant Murphy was not properly asserted in the amended motion for judgment, the Supreme Court held that it "need not address" the appellant's allegation of error in sustaining defendant Murphy's demurrer "further") (citing *Mechtensimer*, 431 S.E.2d at 302).

The letters in the circuit court record establish that no later than August 5, 2020, Ordoñez was not only aware that Phillips had been replaced as his counsel, he was also aware that the reason she had withdrawn was because she had accepted a prosecutor's position in Loudoun County. *See supra* note 4. Ordoñez therefore knew, while his state circuit court habeas was pending, that Phillips had taken a position as a state prosecutor but Ordoñez did not seek leave to amend his circuit court habeas petition to raise this claim.

18

At best, Ordoñez raised Claim 3(ii) in a procedural context where the merits could not be considered. *See Castille*, 489 U.S. at 351 (holding that raising a claim for first time in procedural context where consideration of merits is discretionary does not satisfy federal exhaustion requirement); *see Baldwin*, 541 U.S. at 29 ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in *each* appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.") (emphasis added).[12] "Raising a claim for the first time to the state's highest court on discretionary review is not fair presentation for purposes of exhaustion." *Gunter v. Maloney*, 291 F.3d 74, 81 (1st Cir. 2002) (citing *Castille*, 489 U.S. at 351).[13] Ordoñez's failure to properly raise Claim 3(ii) in state habeas therefore renders it unexhausted.

Moreover, to establish a conflict of interest claim, Ordoñez must demonstrate that "a conflict of interest actually affected the adequacy of his representation." *Mickens v. Taylor*, 535 U.S. 162, 168 (2002) (quotation marks omitted, quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348-49

---

[12] *See also Carrillo-Carrillo v. Coursey*, 823 F.3d 1217, 1220 (9th Cir. 2016) (to exhaust for federal habeas purposes, a petitioner "must show that he has exhausted the remedies available in state court by fairly presenting his claims to each level of" the state's court system, trial and appellate); *Jones*, 591 F.3d at 712-13 (exhaustion requires that a "'prisoner must 'fairly present' his claim in *each* appropriate state court . . ., thereby alerting that court to the federal nature of the claim'. . . [he] must raise his claim before *every* available state court," including appellate courts "whose review is discretionary.'") (quoting *Baldwin*, 541 U.S. at 29; *O'Sullivan*, 526 U.S. at 847) (emphasis added); *Smith*, 565 F.3d at 352 (exhaustion requires that a petitioner "raise the claim at each level of state court review," which includes his initial post-conviction petition before the trial court, and again on appeal); *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004) ("A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim."); *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996) ("To satisfy the exhaustion requirement the petitioner must present every claim raised in the federal petition to each level of the state courts."); *Cruz v. Warden of Dwight Correctional Center*, 907 F.2d 665, 669 (7th Cir. 1990) ("Submitting a new claim to a state's highest court on discretionary review does not constitute a fair presentation.").

[13] In Virginia, the Supreme Court of Virginia will not consider matters raised for the first time on appeal. *See Vinson v. Commonwealth*, 522 S.E.2d 170, 175 (Va. 1999) ("We will not consider for the first time on appeal nonjurisdictional issues not raised below.") (citing Va. Sup. Ct. R. 5:25); *see, e.g.*, *Swiss Re Life Co. Am. v. Gross*, 479 S.E.2d 857, 858 (Va. 19 1997) ("the constitutional due process claim was not raised below" and court would "not consider this issue for the first time on appeal") (citing Rule 5:25); *Guarino v. Clarke*, 2021 Va. Unpub. LEXIS 23, *6 (Va. July 1, 2021) (because petitioner did not "include in his initial petition the specific allegation" of ineffective assistance of counsel, "it was not properly preserved for appellate review") (citing Rule 5:25).

(1980)).[14] Such a claim requires that Ordoñez establish causation between the alleged conflict and the adverse effect on his appeal. *See LoCascio v. United States*, 395 F.3d 51, 56 (2d Cir. 2005) (to establish a claim under *Cuyler*, a petitioner "must establish an 'actual lapse in representation' that resulted from the conflict," *i.e.*, that the conflict caused the attorney not to take the alternative action). Conflict of interest has a temporal component in that Ordoñez "must show 'that the conflict *caused* the attorney's choice' to engage or not to engage in particular conduct." *Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir. 2006) (emphasis added) (citing *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004)) (quoting *McFarland v. Yukins*, 356 F.3d 688, 705 (6th Cir. 2004)); *McFarland*, 356 F.3d at 706 (to establish a conflict of interest, a habeas petitioner must establish "a choice by counsel, *caused* by the conflict of interest." (emphasis added)).

The temporal aspect of the causation element means, at a minimum, that Ordoñez must establish that Phillips was pursuing the prosecutor position before the direct appeal ended, which the record does not support. The petition for appeal in the Court of Appeals of Virginia was denied by order dated August 26, 2019. Ordoñez admits that he was informed "two months later" that his appeal had been denied. [Dkt. No. 38-3 at 16]; *Ordoñez v. Commonwealth*, Record No. 0064-19-4, at 29. Consequently, for Ordoñez to prevail, the alleged conflict must have existed before November 1, 2019, by which time his direct appeal rights would have terminated because he failed to file a notice of appeal within thirty days of the denial of his petition for appeal. *See* Va. Sup. Ct. R. 5:14(a). The record establishes that Phillips was granted leave to withdraw on July 10, 2020, over nine months later, but not that she was pursuing a position as a prosecutor prior to her alleged

---

[14] To establish a conflict of interest adversely affected his performance, Ordoñez must "identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued[,]" "show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision[,]" and "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *United States v. Delhlinger*, 740 F.3d 315, 322 (4th Cir. 2014) (quoting *Mickens v. Taylor*, 240 F.3d 361 (4th Cir. 2001) (en banc), *aff'd*, 535 U.S. 162 (2002)).

"abandonment" of Ordoñez's direct appeal. To be sure, the facts found by the circuit court in the habeas proceeding negate the conflict of interest allegations that Ordoñez raised for the first time in his petition for appeal.[15]

Under AEDPA, federal courts cannot grant habeas relief under § 2254 unless the state court's decision: (1) "was contrary to" clearly established Supreme Court case law; (2) "involved an unreasonable application" of the same; or (3) "was based on an unreasonable determination of the facts in light of the" record before it. *Mahdi v. Stirling*, 20 F.4th 846, 891 (4th Cir. 2021) (citing 28 U.S.C. § 2254(d)); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Vandross v. Stirling*, 986 F.3d 442, 449 (4th Cir. 2021)). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008); *see Schriro v. Landrigan*, 550 U.S. 465, 473-74, (2007). Section 2254(d)(1), as amended by AEDPA, provides for a "backward—looking . . . examination of the state—court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time—*i.e.*, the record before the state court." *Pinholster*, 563 U.S. at 182. Pertinent to this claim, the circuit court found in the habeas proceeding, as follows:

> [Phillips] met with Santana Ordoñez "twice in person and spoke with him over the phone several times and wrote letter[s]." She states that she explained to Santana Ordoñez that the Court of Appeals would only determine "legal issues and not whether he was innocent or if trial counsel was truthful to him." She states that she told Santana Ordoñez that if the petition to the Court of Appeals was denied, that the case could he appealed to the Supreme Court of Virginia, however, upon her

---

[15] *See Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 525 (4th Cir. 2016) ("In applying § 2254(d)... we 'look through' the Supreme Court of Virginia's summary refusal to hear [the habeas petitioner's] appeal and evaluate the Circuit Court's reasoned decision on [the habeas petitioner's] claim.") (citing *Brumfield v. Cain*, 576 U.S. 305, 313 (2015) (applying 'look through' doctrine to evaluate state trial court's reasoned decision denying claim on the merits where state supreme court summarily denied petition for review); *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991) ("[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

review of the record and case law, she explained to Santana Ordoñez that his appeal was a "long shot."

[Phillips] notes that prior to the denial of the petition, . . .[she] discussed with Santana Ordoñez that his "best chan[c]e of being able to withdraw his was plea was through a habeas petition." Once the petition was denied by a per curiam order in the Court of Appeals, [Phillips] "spoke with Santana Ordoñez by phone" to advise him of the denial. During that conversation, "[they] agreed to not proceed with the appeal" and instead, [Phillips] mailed Santana Ordoñez a copy of the Court of Appeals's denial order along with a blank form for a petition for a writ of habeas corpus. In particular, [Phillips] states, "Mr. Santana Ordoñez was an integral part of all decisions about his appeal. And after my last conversation with him I thought he had come to terms with the fact that he was not going to be success[ful] on appeal."

****

Santana Ordoñez was informed of the likelihood of success of his appeal, and after consultation with his appellate attorney, decided to follow her advice to pursue a petition for a writ of habeas corpus instead of a "long shot" appeal.

Thus, [Phillips'] performance was reasonable because she consulted with Santana Ordoñez regarding the strength of his arguments on appeal, discussed the options for when his petition for appeal was denied by the Court of Appeals, and complied with Santana Ordoñez's wishes regarding the appeal of his case. Where Santana Ordoñez agreed to a reasonable strategy to forego an appeal to the Supreme Court in favor of pursuing a petition for a writ of habeas corpus, he cannot thereafter raise claims that his attorney failed to follow express instructions with respect to an appeal of his case, *see* [*Roe v.* ]*Flores-Ortega*. 528 U.S. [470,] 478-79 [2000]. Consequently, Santana Ordoñez fails to demonstrate that appellate counsel's performance was unreasonable or constitutionally deficient.

[Dkt. No. 38-4 at 34]. The factual determinations by the circuit court were reasonable in light of the record before it and support the conclusion that Claim 3(ii) is not exhausted. Ordoñez did not raise his conflict of interest allegation in his state habeas petition and the record establishes that no conflict of interest caused the alleged abandonment.

With regard to Claim 3(iii), whether exhausted or not, the claim has no merit for the same reasons discussed with regard to Claim 1(vii)—Ordoñez withdrew his Claim 6, which Claim 3(iii) asserts was the "obvious double jeopardy claim." [Dkt. No. 5 at 8]; *see supra* note 10; *Castro v. Ward*, 138 F.3d 810, 832 (10th Cir. 1988), ("Because we have held that the substance of the issues

involved have no merit, appellate counsel was not ineffective, and [defendant] suffered no prejudice, from his appellate counsel's failure to raise them."); *see also Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. ) ("[A]ppellate counsel was not ineffective for failing to raise a nonmeritorious issue"). Thus, because Claim 3(iii) is unexhausted and lacks merit, Claim 3(iii) will be dismissed.

### C. Claims 4 and 5

As previously discussed, Ordoñez's Claims 4 and 5 were not raised in his state habeas petition and were raised for the first time in his petition for appeal to the Supreme Court of Virginia. Claim 4 alleges various constitutional violations based upon "the trial court's reliance on impermissible factors" to impose a "'whooping' upward departure,' from [sentencing] guidelines in order to send a 'message' to nonresident Hispanics they have no business being, and are not welcome, in wealthy Fairfax County." [Dkt. No. 1-1 at 22].[16] Claim 5 also alleges the same improper message language and adds that the trial court adopted improper procedures, "relied on the improper testimony of defense counsel regarding the critical, contested, issue of valuation," and failed to hold a separate restitution hearing as required by statute. [*Id.* at 24].[17] Respondent

---

[16] There was no reference to "Hispanics" by the prosecutor. The prosecutor did argue that Ordoñez was not a local resident and that he had apparently came to Fairfax County from another country (lived in Israel, born in Columbia) to steal jewelry at the jewelry show; that Ordoñez had no ties to the community or the United States; and that his co-defendant was still at large—but the argument was meant to establish that these facts did not make Ordoñez a good candidate for probation. [Dkt. No. 38-10 at 30, 32]. The prosecutor referenced Ordoñez's lack of ties to the local community because the probation officer had "thought probation was appropriate." [*Id.* at 42]. Further, Claim 4 does not properly set forth an equal protection claim. *See Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) ("To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.").

[17] Trial counsel did not testify, and instead used the information provided by the victim to come up with a calculation o $818,000, which was nearly $400,000 less than the amount testified to by the victim. [*Id.* at 39, 44]. In Virginia, restitution is determined by the court at sentencing. Va. Code Ann. § 19.2-305.1 ("At the time of sentencing, the court shall determine the amount to be repaid by the defendant and the terms and conditions thereof."). "On appeal, where the restitutionary amount is supported by a preponderance of the evidence and is 'reasonable in relation to the nature of the offense," the determination of the trial court will not be reversed." *McCullough v. Commonwealth*, 568 S.E.2d 449, 451-52 (Ct. App. Va. 2002) (quoting *Deal v. Commonwealth*, 421 S.E.2d 897, 899 (Ct. App. Va. 1992)). At best, this claim may allege a violation of state law, and in conducting habeas review, "it is not the province of a

correctly argues that these two claims were not raised in the state habeas petition, and were argued for the first time in the petition for appeal. Indeed, Ordoñez admits this in his response to the first motion to dismiss because he cited to the petition for appeal to establish the claims were raised in state court. [Dkt. No. 28 at 9]. Each of these claims raises allegations of trial error in the criminal proceedings and were not exhausted on direct appeal or raised in the state habeas petition.

Ordoñez argues that it is unfair for Respondent to raise a default argument when Respondent did not do so in his initial motion to dismiss and that the argument should be struck. Ordoñez further asserts that Respondent's failure to raise the default argument in the first motion to dismiss constitutes a waiver of the "affirmative defense." [Dkt. No. 42 at 5, 7, 7-8].[18] Ordoñez's arguments implicitly admit that he failed to raise either claim in state habeas petition. Moreover, his arguments are not supported by the record because Respondent raised the default argument in his first motion to dismiss, and "[a] procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner *would* be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (emphasis added) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)). In short, even though a state court has not expressly held that a claim is barred, a federal court can deem the claim simultaneously exhausted and defaulted by the state if the claim would be defaulted were the claim returned to state court to be exhausted.

---

federal habeas court to reexamine state-court determinations on state-law questions. . . . a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991)); *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998) (a claim that "rests solely upon an interpretation of Virginia's case law and statutes . . . is simply not cognizable on federal habeas review.") (citation omitted).

[18] Ordoñez also appears to argue because the circuit court did not expressly apply the *Slayton v. Parrigan* default to his Claims 4 and 5 that the state court did not "clearly and expressly base[] its dismissal . . . on a state procedural rule." [Dkt. No. 42 at 7] (citation omitted). Again, Ordoñez's argument proves the respondents point. As discussed above, the state circuit court could not have applied *Slayton v. Parrigan* to claims that were not raised in the petition, . *See infra* at 23-24 (citing *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998)).

In addition, Respondent's first motion to dismiss set out the claims Ordoñez had raised in his state habeas petition, which did not include his present Claims 1(vii), 3(ii), 3 (iii), 4, and 5. [*Id.* at 2-3]. Respondent argued in the first motion to dismiss that Claims 1(vii), 3(ii), 3 (iii), 4, and 5 "were not raised in state court," and were therefore simultaneously exhausted and defaulted for purposes of federal habeas review. [Dkt. No. 19 at 13-14]. Respondent also argued that Claims 4 and 5 were barred under the rule of *Slayton v. Parrigan*. [*Id.* at 14]. In Ordoñez's reply to the first motion to dismiss, he argued that each of the claims was exhausted. As part of that argument, he cited not to his state petition, but to his petition for appeal [Dkt. No. 28 at 8, 9], which unintentionally proved that the respondent's argument was correct. Consequently, Ordoñez's exhaustion argument has no merit. *See supra,* at 16-23. As a result, the motion to strike will be denied.

### D. Unexhausted and Defaulted Claims

If a claim is unexhausted, "and the prisoner is barred from now raising the claim in state court, then we treat each unexhausted claim as procedurally defaulted." *Moore v. Stirling*, 952 F.3d 174, 181 (4th Cir. 2020). Here, if Ordoñez attempted to raise Claim 1(vii), 3(ii), 3(iii), 4, or 5 by way of a second state habeas petition, each claim would be barred by the Virginia habeas statute of limitations, Virginia Code § 8.01-654(A)(2), and Virginia's bar on successive habeas petitions, Virginia Code § 8.01-654(B)(2). As both the Virginia statute of limitations and the Virginia successive petition bar are adequate and independent state procedural rules barring federal habeas review, these claims are deemed simultaneously exhausted and defaulted. *See Pope v. Netherland*, 113 F.3d 1364, 1372 (4th Cir. 1997) (Virginia Code § 8.01- 654(B)(2) is independent and adequate state law default); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006) (Virginia Code §§ 8.01-654(A)(2) and 8.01-654(B)(2) are independent and adequate

state law defaults). Claims 4 and 5 would also be barred by the rule of *Slayton v. Parrigan* because the claims were not raised at trial and pursued on direct appeal. *Slayton v. Parrigan* is also an adequate and independent state law ground that precludes federal review. *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006). Accordingly, all five claims are defaulted.

### E. Cause and Prejudice

Federal courts may not review barred claims absent a showing of cause and prejudice, or a fundamental miscarriage of justice, such as actual innocence. *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Shinn v. Ramirez*, 142 S. Ct. 1718, 1728 (2022) ("To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim." (quoting *Coleman*, 501 U. S. at 750)). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman*, 501 U.S. at 753-54; *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995). Petitioner does not allege cause to excuse his defaults, and none is apparent from the record. Thus, no cause or prejudice exists to excuse Petitioner's defaults.

Moreover, as discussed above, while Claims 1(vii), Ground 3(ii), and Ground 3(iii) raise claims of ineffective assistance of counsel, they are exhausted, defaulted, and have no merit. Hence, there is neither cause nor prejudice to excuse the default. Likewise, Claims 4 and 5 could have been raised at trial and pursued on direct appeal, but that appeal would be barred under the rule of *Slayton v. Parrigan* if the claims were raised in a state habeas petition.[19] As noted, Ordoñez

---

[19] Claims 4 and 5 are also conclusory and do not state a claim. *See United States v. Dyess*, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding that the district court may disregard "vague and conclusory allegations" in habeas petitions

does not argue cause to excuse his default, and instead simply argues the claims were exhausted because he raised them in his petition for appeal. This argument is unpersuasive for the reasons discussed above, and the claims remain defaulted.

### IV. Standard of Review

Under AEDPA, "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *accord Renico v. Lett*, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); *see Harrington*, 562 U.S. at 103 (state decision is unreasonable application of federal law only if ruling so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." *Renico*, 559 U.S. at 773 (internal quotations and citations omitted). "The required

---

and review only claims "supported by facts and argument."); *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (habeas petitioner must come forward with some evidence claim might have merit; unsupported, conclusory allegations are insufficient); *see also Sanders v. United States*, 373 U.S. 1,19 (1963) (finding summary denial of habeas action appropriate where petitioner "stated only bald legal conclusions with no supporting factual allegations").

deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington*, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). AEDPA also limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 18. "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008); *see Schriro*, 550 U.S. at 473-74.

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. *Id.* at 687. The United States Supreme Court has characterized AEDPA deference in the context of "a *Strickland* claim evaluated under the § 2254(d)(1) standard" as "doubly deferential judicial review." *Knowles*, 556 U.S. at 123; *see also Woods v. Etherton*, 578 U.S. 113, 117 (2016). "[B]ecause counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,' . . . federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Id.* (citations omitted). "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Valentino v. Clarke*, 972 F.3d 560, 581 (4th Cir. 2020) (quoting *Harrington*, 562 U.S. at 102-03) (additional citation omitted).

*Strickland*'s first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." *Id.* at 689. The "basic lesson" of *Strickland* is that "judicial scrutiny" of counsel's performance must be "highly deferential." *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." *Id.*

*Strickland*'s second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, the second prong of the *Strickland* test requires the petitioner to show that counsel's substandard performance caused the petitioner prejudice, which requires he establish "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Burket v. Angelone*, 208 F.3d 172,189 (4th Cir. 2000) (citation omitted). In determining the prejudice prong, a petitioner's "subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012) (quoting *Pilla v. United States*, 668 F.3d 368,373 (6th Cir. 2012) ("The test is objective, not subjective.")). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (quoting *Knowles*, 556 U.S. at 123).

### V. Remaining Federal Claims

Because the trial court's decision denying Ordoñez's petition for writ of habeas corpus is the last reasoned state court opinion addressing his ineffective assistance of counsel claims, this Court "look[s] through" the Supreme Court of Virginia's refusal order to the reasoning of the trial court. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018).

   *A. Claim 1(i)*

In Claim 1(i), Ordoñez alleges that his trial counsel was ineffective because he "provided minimal pretrial consultation." (ECF No. 1-1 at 15). The state court concluded that this claim failed to meet either prong of the *Strickland* test:

> Preliminarily, there is no minimum number of meetings required to provide effective assistance of counsel. *See Moody v. Polk*, 408 F.3d 141, 148 (4th Cir. 2005). "[T]he brevity of contacts between counsel and defendant, standing alone, is not sufficient to support a claim of ineffective assistance." *Gardner v. Dixon*, No. 91-4010, 1992 U.S. App. LEXIS 12971, at *11 (4th Cir. June 4, 1992) (internal citation omitted); *see also Schwander v. Blackburn*, 750 F.2d 494, 499-500 (5th Cir. 1985) (asserting that by itself, a short period of consultation between a defendant and his attorney cannot support an ineffective assistance claim). Second, Santana Ordoñez specifically averred that he "discussed the charge and its elements with his attorney," he "had enough time to discuss any possible defenses to the charge," and he was "satisfied with the services of [his] attorney." He has provided no reason to contradict these sworn statements. *Anderson[v. Warden]*, 222 Va. [511] 516, 281 S.E.2d [885] 888 [(1981)]. Third, Santana Ordoñez fails to articulate with specificity what additional meetings or telephone calls would have accomplished and this failure to proffer is fatal to his claim. *Nickerson v. Lee*, 971 F.2d 1125, 1136 ([4th Cir.] 1992) (holding petitioner must come forward with some evidence claim has merit; unsupported, conclusory allegations are insufficient); *Hedrick v. Warden*, 264 Va. 486, 521, 570 S.E.2d 847, 862 (2002) (finding habeas petitioner had not established deficient performance or prejudice because he failed to provide any evidence to support claim).
>
> Finally, Santana Ordoñez does not claim that he would have rejected the plea agreement and insisted on proceeding forward with a trial, but for his attorney's allegedly ineffective performance in only meeting with him "for 30 minutes" during their initial meeting, and for not calling him until three days prior to his court date. Without this claim, Santana Ordoñez's claim is insufficient to state any prejudice as required under *Hill [v. Lockhart]*, 474 U.S. [52,] 59-60 [(1985)]. Moreover, and for the reasons articulated more fully below, Santana Ordoñez has failed to

demonstrate that it would have been reasonable to go to trial even if he had had more contact with his attorney prior to the entry of his *Alford* pleas.

[Dkt. No. 38-4 at 19-20].

Ordoñez has failed to demonstrate that the state court's determination of this claim was contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly, Claim 1(i) will be dismissed.

*B. Claim 1(ii)*

In Claim 1(ii), Ordoñez alleges that his trial counsel failed to use the services of a "necessary interpreter" when consulting with him. [Dkt. No. 1-1 at 15]. In determining that this claim failed to meet the requirements of *Strickland*, the state court found:

> Throughout the entirety of Santana Ordoñez's plea hearing, he was accompanied by a sworn Spanish interpreter. At no point did he indicate he could not understand the proceedings. On the contrary, when this Court asked Santana Ordoñez if he understood everything in the plea agreement form, he answered, "I understand." Santana Ordoñez further affirmed that he read through the form or had it translated before he signed it. When asked if he believed he understood everything that was contained in the agreement, Santana Ordoñez answered, "Yes, ma'am." He further confirmed that his attorney had explained everything in the agreement, and that the statements of fact contained in the agreement were all true. At the end of the colloquy, when this Court asked if Santana Ordoñez had understood all of the questions he was asked in court, he replied, "Yes ma'am." He has not provided any reason why this Court should allow him to contradict his previously sworn statements. *Anderson*, 222 Va. at 516, 281 S.E.2d at 888; *see also Beck [v. Angelone]*, 261 F.3d [377] 396 [(2001)]. Accordingly, this Court finds he has failed to demonstrate that trial counsel's performance was unreasonable.

> Santana Ordoñez[] has also failed to demonstrate that he was prejudiced by trial counsel's representation. Where he stated that the plea agreement was translated and where he told this Court that he understood it, he fails to demonstrate that he would have rejected the plea agreement and gone to trial but for trial counsel's failure to provide him with a Spanish-language plea form. And for the reasons previously stated, Santana Ordoñez has failed to demonstrate that it would have been reasonable for Santana Ordoñez to reject the plea offer and go to trial. He thus has failed to state a claim of prejudice under *Hill*, 474 U.S. at 59-60.

[Dkt. 38-4 at 23-24].

31

Ordoñez has failed to demonstrate that the state court's determination of this claim was contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly, Claim 1(ii) will be dismissed.

*C. Claims 1(iii), 1(v), and 1(vi)*

Ordoñez alleged ineffective assistance of counsel regarding valuation and restitution in three claims, which the state court considered together. In Claim 1(iii), Ordoñez alleges his trial counsel "provided substantive evidence against Ordoñez when he voluntarily proffered at sentencing a[n] entirely made-up valuation estimate when he knew the issue was disputed and the crux of the prosecution." [Dkt. No. 1-1 at 15]. In Claim 1(v), Ordoñez alleges his trial counsel "failed to investigate the crucial issue of valuation." [*Id.*]. In Claim 1(vi), Ordoñez alleges that trial counsel "failed to advocate at sentencing." [*Id.*]. He claims that trial counsel remained "mute and took no steps to withdraw the plea or create an appellate record" after the Commonwealth argued that the trial court should use, in Ordoñez's terms, a "whooping upward departure sentence as a message verdict to all nonresident Hispanics to stay out of wealthy Northern Virginia communities, and the court signaled its willingness to do so and use incarceration as a weapon to compel [Petitioner's] cooperation with the police[.]" [*Id.* at 16].

The state circuit court construed the claims as presenting the same essential argument—that trial counsel was ineffective at sentencing by failing to investigate the value of the stolen jewelry, proffering an alternate valuation, and failing to effectively advocate at sentencing, and that Ordoñez had failed to establish a claim under *Strickland*.

> Santana Ordoñez has not proffered what further investigation would have revealed, or how these alleged failures to call expert witnesses or present video evidence affected the outcome of his case. He has not demonstrated that additional experts would have testified that the $818,000 restitution amount was incorrect. This failure to proffer is fatal to these claims. *Sigmon [v. Dir. of the Dep't of Corr.*], 285 Va.

[526,] 535-36, 739 S.E.2d [905,] 909-10 (failure to show what additional investigation would have revealed is fatal to *Strickland* claims).

Further, Santana Ordoñez did not object to the majority of the proffer of the evidence during his plea colloquy. His trial counsel commented that the restitution amount was in dispute, and questioned the DNA evidence, however he noted that his client wished to "avoid the risk of trial" and desired to receive the benefit of a plea agreement. When this Court asked him if he was "pleading guilty because this is the Commonwealth's evidence and you do not wish to take the risk that a jury will find you guilty beyond a reasonable doubt," he answered, "Yes, ma'am." He voluntarily waived his right to trial by jury where he could have presented evidence in his own defense. Santana Ordoñez should not be permitted to repudiate his sworn statements to this Court. *Anderson*, 222 Va. at 516, 281 S.E.2d at 888.

Nevertheless, a defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.'" *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting *United States v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)). Cf. *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). Here, Santana Ordoñez fails to state what his trial counsel could have learned based on a further investigation, and how that information would have altered the outcome of his case.

In addition, Santana Ordoñez fails to state what the expert witnesses would have testified to and how that testimony would have altered the outcome of his case. He fails to allege how the video evidence presented during the preliminary hearing would have altered the outcome of his case. He fails to assert that it was unreasonable for his trial counsel to fail to present that video when Santana Ordoñez had already been convicted of the charge, and the only thing to be determined was his sentence.

Trial counsel is afforded "wide latitude in determining which witnesses to call as part of their trial strategy." [*United States v.]Dyess*, 730 F.3d [354,] 364-65 [(2013)] (finding that counsel was not ineffective for failing to call additional witnesses and habeas petitioner "offers nothing more than speculative conclusions in explaining who . . . counsel failed to call and what aid their testimony would have provided to Dyess' case"); *see Bunch v. Thompson*, 949 F.2d 1354, 1364 (4th Cir. 1991) (noting that because counsel is equally susceptible to allegations of ineffective assistance of counsel based on action or inaction under certain circumstances that a habeas court should credit "plausible strategic judgments" counsel makes). Santana Ordoñez's claims fail to demonstrate that his trial attorney's failure to call expert witnesses at the sentencing hearing was anything but reasonable strategy.

Regardless, trial counsel did not remain silent on the issue of value of the stolen jewelry, rather he questioned the Commonwealth's sole witness, the victim, about his ability to fairly ascertain the value of his stolen property. It was through trial counsel's cross examination that the evidence of total loss was called into question where the Commonwealth did not corroborate the victim's testimony of the value of his jewelry. Trial counsel questioned the victim's itemization of his stolen jewelry by highlighting duplicate items within the total loss list. Trial counsel argued

> For [the victim] to tell the Court what the values are without any documentation whatsoever other than what he says they are, which is self-interest to him, and again, I'm not denying the fact that he's been traumatized by a theft, but for Mr. Santana to be ordered to pay based on a value that the victim says without proof, especially in items that are—I mean, I'm not an expert on jewelry, but even he testified it's what dealers would pay.

> So the market is very subjective and there's no objective measurement here; that's the issue. So to assign a value for restitution, obviously, I would ask the Court to defer on that, because I think there's other remedies available for where he could [bring that] in a civil court, so that's my position on that.

The record demonstrates that trial counsel's vigorous cross-examination of the victim and argument during the sentencing hearing was reasonable, and in fact, this Court was ultimately convinced to reject the Commonwealth's proposed valuation. Thus, trial counsel's performance was objectively reasonable, and his failure to call additional witnesses or present video evidence during sentencing does not rise to deficient performance pursuant to *Strickland*.

[Dkt. No. 38-4 at 28-31].

Ordoñez has not demonstrated that the state court's judgment was contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts. *See Pinholster*, 563 U.S. at 195-96 (discussing "the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions" as well as the "strong presumption of competence that *Strickland* mandates;" habeas courts must "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did" (internal citations and quotation marks omitted)). Claims 1(iii), 1(v), and 1(vi) will be dismissed.

### D. Claim 1(iv)

In Claim 1(iv), Ordoñez alleges his trial counsel "provided mistaken advice a plea would result in a probation-only sentence." [Dkt. No, 1-1 at 15]. The state court rejected his claim, finding that Ordoñez failed to establish a claim under *Strickland*:

> Santana Ordoñez has not demonstrated how counsel's advice and explanation of the outcome of his case satisfies either prong under *Strickland*. The record demonstrates that counsel accurately advised Santana Ordoñez what the terms of the plea would be and what the sentencing exposure would be if Santana Ordoñez agreed to accept a plea agreement. During his plea colloquy, Santana Ordoñez told this Court that he reviewed his entire plea form with his attorney, and his attorney explained "everything that's in this agreement" to him. Santana Ordoñez demonstrated that he understood he was exposed to the entire range of punishment for the charge of grand larceny when he indicated that all of the statements in the plea form were true and accurate, that he understood the range of punishment, and that there was no agreement as to sentence. The plea form itself states that "[m]y attorney has discussed with me the nature and elements of the offense, and has advised me as to any possible defenses I might have in this case." Further, it states that his trial attorney advised him about the range of punishment. Finally, it states, "I declare . . . [no one] has made any promises to me that I would receive a lighter sentence or probation if I would plead guilty." Santana Ordoñez has not provided clear and convincing evidence in order to contradict his sworn statements during the plea colloquy. *Anderson*, 222 Va. at 516, 281 S.E.2d at 888; *see also Beck*, 261 F.3d at 396.
>
> Furthermore, Santana Ordoñez's bare claim of "actual prejudice" is contradicted by the record, where through his attorney's negotiation with the Commonwealth, a second felony charge was dropped pursuant to the plea agreement. Had Santana Ordoñez gone to trial, the jury would have heard the overwhelming evidence against him, and likely would have convicted him of both the grand larceny and felony larceny with intent to sell, where his total maximum sentencing exposure would have been 40 years in prison.[20] "A defendant has no entitlement to the luck of a lawless decisionmaker" and "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." *Strickland*, 466 U.S. at 695. Where the evidence of Santana Ordoñez's culpability was overwhelming and he offers no credible defenses, this Court must presume that he would have been convicted had he gone to trial.
>
> It was reasonable, therefore, for Santana Ordoñez's attorney to advise him to plea[d] guilty to the single count of grand larceny, which cut in half his sentencing

---

[20] The footnote in the circuit court opinion was designated as footnote 4, and read "*See* [Va.] Code § 18.2-108.01 (maximum penalty for felony larceny with intent to sell property with a value over $1,000 is 20 years in prison); *see* [Va.] Code § 18.2-95 (maximum penalty for grand larceny is 20 years in prison)." [Dkt. No. 38-4 at 21].

exposure. Moreover, it was rational for Santana Ordoñez to plead guilty because, where he was likely to be convicted, he received a potential sentencing benefit by pleading guilty. Pleading guilty demonstrated remorse, *see Bowles v. Nance*, 236 Va. 310, 314, 374 S.E.2d 19, 21 (1988) (recognizing that "candor of a guilty [c]ould prompt a lighter sentence); *see also Meyer v. Branker*, 506 F.3d 358, 369-70 (4th Cir. 2007) (holding a guilty plea demonstrates remorse). As such, Santana Ordoñez fails to show any prejudice as a result of trial counsel's allegedly poor advice where the record demonstrates not only was Santana Ordoñez fully made aware of the risks and exposure, but the Court sentenced him to less than half of what he would have faced had he gone to trial. *Hill*, 474 U.S. at 59-60.

In any event, even if trial counsel gave incorrect advice regarding Santana Ordoñez's possible sentence, this Court reviewed the sentencing exposure with him during the plea hearing, and told Santana Ordoñez that the sentencing guidelines were "only guidelines[.] They are helpful to the Court but they will not determine your sentence." *See United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) ("[I]f the information given by the court at the [guilty plea] hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant."); *Muhammad v. Warden*, 274 Va. 3, 16-18, 646 S.E.2d 182, 195 (2007) ("The record, including the trial transcript, demonstrates that any alleged inadequacy in counsel's advice was cured when the trial court informed petitioner of the consequences he faced by refusing to cooperate with the Commonwealth's mental health expert.").

[Dkt. No. 38-4 at 20-22].

Ordoñez has not demonstrated that the state court's judgment was contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts. Claim 1(iv) will be dismissed.

*E. Claim 2*

In Claim 2, Ordoñez alleges he was "actually and/or constructively abandoned" by his appellate counsel, Phillips. [Dkt. No. 1-1 at 18]. He claims that after appellate counsel filed a petition for appeal in the Court of Appeals of Virginia, she "closed her practice, accepted a job as a state prosecutor, ceased all communication with [Petitioner] and failed to file any further required pleadings[.]" [*Id.* at 18]. He relies on the fact that appellate counsel, Phillips, was admonished by

the Virginia State Bar for failing to file an appeal to the Supreme Court of Virginia on his behalf.

[*Id.* at 18-19].[21]

While Ordoñez's claim includes additional factual allegations that were not presented to

the state habeas court, the substance of his claim remains the same, that Phillips "abandoned the

appeal." [Dkt. No. 38-4 at 32]. The state court found this claim did not meet the requirements of

*Strickland*, stating:

> This Court's analysis of Santana Ordoñez's claims is guided by the decision of the
> Supreme Court of the United States in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000).
> *See also Miles v. Sheriff of Va. Beach City Jail*, 266 Va. 110, 114, 581 S.E.2d 191,
> 193 (2003) (holding that even in the context of a guilty plea, counsel's performance
> is deficient and unreasonable if counsel disregards an unequivocal and timely
> instruction to file an appeal). In Flores-Ortega, the Court held that the two-part test
> for adjudicating claims of ineffective assistance of counsel previously enunciated
> in *Strickland*, 466 U.S. 668, applies to a claim "that counsel was constitutionally
> ineffective for failing to file a notice of appeal." *Flores-Ortega*, 528 U.S. at 477.
> "If counsel has consulted with the defendant, the question of deficient performance
> is easily answered: Counsel performs in a professionally unreasonable manner only
> by failing to follow the defendant's express instructions with respect to an appeal."
> *Flores-Ortega*, 528 U.S. at 478. "If counsel has not consulted with the defendant,
> the court must in turn ask a second, and subsidiary, question: whether counsel's
> failure to consult with the defendant itself constitutes deficient performance." *Id.*
> "[A] highly relevant factor in this inquiry will be whether the conviction follows a
> trial or a guilty plea, both because a guilty plea reduces the scope of potentially
> appealable issues and because such a plea may indicate that the defendant seeks an
> end to judicial proceedings." *Flores-Ortega*, 528 U.S. at 480. "When a conviction
> is based upon a defendant's guilty plea and the defendant receives the sentence
> fixed by law, 'there is nothing to appeal' absent a jurisdictional defect." *Miles*, 266
> Va. at 114, 581 S.E.2d at 193 (citation omitted).
>
> "[T]he clear and unambiguous language in Code § 8.01-660 leads . . . to the
> inescapable conclusion that this statute permits a habeas court to consider the
> affidavit of any witness as substantive evidence" when performing this analysis.
> *Yeatts v. Murray*, 249 Va. 285, 288, 455 S.E.2d 18, 21 (1995); *Shaikh v. Johnson*,
> 276 Va. 537, 549, 666 S.E.2d 325, 331 (2008). Unlike the typical civil case, a
> habeas court may consider any "recorded matters," including records from the prior
> criminal trial that resulted in the challenged conviction. *See* Code § 8.01-654(B)(4);
> *see also Smith v. Brown*, 291 Va. 260, 264, 781 S.E.2d 744, 747 (2016).

---

[21] As noted above, Phillips did not leave private practice for approximately nine months after the direct appeal
had ended. In short, the record establishes that she did not file the petition and close her practice.

Here, appellate counsel avers that she met with Santana Ordoñez "twice in person and spoke with him over the phone several times and wrote letter[s]." She states that she explained to Santana Ordoñez that the Court of Appeals would only determine "legal issues and not whether he was innocent or if trial counsel was truthful to him." She states that she told Santana Ordoñez that if the petition to the Court of Appeals was denied, that the case could be appealed to the Supreme Court of Virginia, however, upon her review of the record and case law, she explained to Santana Ordoñez that his appeal was a "long shot."

Appellate counsel notes that prior to the denial of the petition, she discussed with Santana Ordoñez that his "best chan[c]e of being able to withdraw his was plea was through a habeas petition." Once the petition was denied by a per curiam order in the Court of Appeals, appellate counsel "spoke with Santana Ordoñez by phone" to advise him of the denial. During that conversation, "[they] agreed to not proceed with the appeal" and instead, appellate counsel mailed Santana Ordoñez a copy of the Court of Appeals's denial order along with a blank form for a petition for a writ of habeas corpus. In particular, appellate counsel states, "Mr. Santana Ordoñez was an integral part of all decisions about his appeal. And after my last conversation with him I thought he had come to terms with the fact that he was not going to be success[ful] on appeal."

Santana Ordoñez's claims fail to demonstrate by a preponderance of the evidence that his appellate attorney disregarded a "timely and unequivocal" instruction to file an appeal. *Miles*, 266 Va. at 117, 581 S.E.2d at 195. "[W]here a defendant, fully informed of the reasonable options before him, agrees to follow a particular strategy at trial, that strategy cannot later form the basis of a claim of ineffective assistance of counsel." *Lee v. Johnson*, No. 1:10cv240, 2011 U.S. Dist. LEXIS 23050, at *14 (E.D. [Va.] Mar. 8, 2011) (quoting *United States v. Weaver*, 882 F.2d 1128, 1140 (7th Cir. 1989)). Here, the affidavit from appellate counsel demonstrates that Santana Ordoñez was informed of the likelihood of success of his appeal, and after consultation with his appellate attorney, decided to follow her advice to pursue a petition for a writ of habeas corpus instead of a "long shot" appeal.

Thus, appellate counsel's performance was reasonable because she consulted with Santana Ordoñez regarding the strength of his arguments on appeal, discussed the options for when his petition for appeal was denied by the Court of Appeals, and complied with Santana Ordoñez's wishes regarding the appeal of his case. Where Santana Ordoñez agreed to a reasonable strategy to forego an appeal to the Supreme Court in favor of pursuing a petition for a writ of habeas corpus, he cannot thereafter raise claims that his attorney failed to follow express instructions with respect to an appeal of his case. *See Flores-Ortega*, 528 U.S. at 478-79. Consequently, Santana Ordoñez fails to demonstrate that appellate counsel's performance was unreasonable or constitutionally deficient.

Therefore, based on the record and lack of support for his allegations, this Court holds that Santana Ordoñez's claims fail to demonstrate deficient performance and prejudice under *Strickland* and *Flores-Ortega*, and are therefore dismissed.

[Dkt. No. 38-4 33-35].

Ordoñez has not demonstrated that the state court's judgment was contrary to federal law, an unreasonable application of federal law, or based on an unreasonable determination of the facts. *Flores-Ortega*, 528 U.S. at 478; *see also Weaver*, 882 F.2d at 1140. Claim 2 will be dismissed.

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 36] is granted, and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.[22]

Entered this 21st day of March 2024.

Alexandria, Virginia

/s/

Rossie D. Alston, Jr.
United States District Judge

---

[22] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.